**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4953-16T2

N.K.,

    Appellant,

v.

NEW JERSEY STATE PAROLE
BOARD,

    Respondent.

_____

Submitted August 21, 2018 — Decided September 7, 2018

Before Judges Sumners and Gilson.

On appeal from the New Jersey State Parole Board.

Eckert Seamans Cherin & Mellott, LLC, attorneys for appellant (Edgar Alden Dunham, IV, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

    N.K. appeals from a May 31, 2017 final determination of the New Jersey State Parole Board (Board) that he seriously and

persistently violated the conditions of his parole. Accordingly, the Board revoked his parole and ordered him to serve twelve months of incarceration. We affirm.

## I.

In 2010, N.K. pled guilty to second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4), and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a). He admitted that when he was twenty-three years old, he engaged in sexual conduct with two victims under the age of sixteen. He was evaluated and found to have the traits of repetitive and compulsive sexual behavior within the meaning of the Sex Offender Act, N.J.S.A. 2C:47-1 to -10. In 2011, N.K. was sentenced to five years in prison to be served at the Adult Diagnostic and Treatment Center. He also was sentenced to parole supervision for life (PSL) upon his release and to registration and restrictions under Megan's Law.

N.K. was released from custody in 2014, and he began to serve PSL. At the time of his release, N.K. agreed to abide by various parole conditions that required him, among other things, to (1) successfully complete appropriate community or residential counseling or treatment programs as directed; (2) refrain from using, creating, or accessing a social networking profile or service unless authorized; (3) abstain from alcohol; and (4)

complete appropriate mental health counseling programs as directed.

In May 2014, N.K. enrolled in a mental health program. In February 2015, he admitted that he was found to be in possession of two bottles of alcohol while at the program. Thereafter, he was discharged from the mental health program for making terroristic threats against the program.

In May 2015, N.K. was referred to a second recovery program for substance abuse treatment and mental health counseling. He was discharged from that program in November 2015, for failing to complete an eight-week anger management course.

On August 7, 2016, N.K. signed a written notice of additional special conditions of his PSL, including a requirement that he notify his parole officer prior to the purchase, possession, or use of a computer or other device with internet capability. Less than two weeks later, a counselor at a community center where N.K. was receiving mental health treatment contacted N.K.'s parole officer, the parole officer of record (POR). The counselor informed the POR that he saw N.K. using a computer to access Facebook. The POR investigated that information, and N.K. admitted that he had a Facebook account under an alias that was active since at least 2010. N.K. also admitted that he had paid other people, including his sister, to access his Facebook account and

A-4953-16T2

update him on the account's activity. N.K. also told the POR that he had accessed YouTube, which is a website that allows users to watch, upload, and share various types of videos.

On August 18, 2016, N.K. was served with written notification of five violations of the conditions of his parole. Specifically, he was charged with failing to (1) participate in and successfully complete an appropriate community or residential counseling or treatment program as directed; (2) refrain from using any computer or device to create a social networking profile or to access any social networking service or chat room; (3) notify his parole officer prior to purchasing, possessing, or using any computer or device that permits access to the internet; (4) refrain from the purchase, possession, or use of alcohol; and (5) enroll in and participate in a mental health counseling program as directed. N.K. also was advised of his rights concerning those charges, including his right to representation by legal counsel and his right to a hearing. Thereafter, legal counsel was assigned, and N.K. and his legal counsel participated in a hearing before a Board hearing officer.

At the hearing, N.K. and his counsel were informed that N.K.'s POR was not available that day and, instead, another parole officer would present the charges against N.K. N.K.'s counsel objected, but when given the option to adjourn the hearing until the POR was

available, N.K.'s counsel declined to postpone the hearing. The stand-in parole officer then presented the evidence against N.K., which consisted of the POR's written PSL violations summary (POR's written summary), the written admissions by N.K., and the written discharges from the two treatment programs. The POR's written summary documented N.K.'s possession of alcohol, his discharge from the two programs, the information received from the counselor who had seen N.K. access Facebook and N.K.'s admissions, including his admission to viewing YouTube.

On cross-examination, the stand-in parole officer acknowledged that he had no personal knowledge of the case and that his testimony was based on the POR's written summary and other documents. N.K. testified that he never knowingly violated the terms or conditions of his PSL. His counsel then argued that the Board had failed to present clear and convincing evidence of any violation of N.K.'s conditions of parole.

After considering the information submitted by the parole officer and the testimony and arguments on behalf of N.K., the hearing officer found clear and convincing evidence of each of the five charged parole violations. With respect to the use of an internet-capable device, the hearing officer relied on N.K.'s written admission that he had a Facebook account, the information from the counselor who had seen N.K. access Facebook, and N.K.'s

verbal admission that he had viewed YouTube. Concerning the treatment programs, the hearing officer relied on the written discharges from those programs. Finally, with regard to the possession of alcohol, the hearing officer relied on N.K.'s written admission. The hearing officer then recommended that N.K.'s parole be revoked and that he be incarcerated for twelve months.

A two-member panel of the Board reviewed and adopted the hearing officer's findings and recommendations. N.K. administratively appealed to the full Board. After reviewing the matter on May 31, 2017, the full Board agreed with the panel and found that there was clear and convincing evidence of each of the five parole condition violations. The full Board also concurred with the recommendation that N.K.'s parole be revoked and that he be incarcerated for twelve months.

## II.

On this appeal, N.K. makes four arguments. He contends that the Board (1) acted arbitrarily and capriciously; (2) erred by relying on hearsay evidence that violated his due process rights and the Residuum rule; and (3) erred in finding clear and convincing evidence of serious and persistent violations of N.K.'s parole conditions. N.K. also argues that his appeal is not moot even though he has completed his twelve months of incarceration. Having reviewed the record and law, we are not persuaded by any

of these arguments, and we discern no basis to disturb the final agency decision of the Board.

We begin by addressing the mootness issue. Notably, the Board does not contend that the issues presented by N.K. are moot. N.K. has completed the twelve months of incarceration, accordingly that part of his appeal is moot. See State v. F.W., 443 N.J. Super. 476, 479 (App. Div. 2016). We conclude, however, that because N.K. is subject to continued parole supervision, the issues raised on appeal are "important matter[s] of public interest and capable of repetition warranting our review." In re J.S., 444 N.J. Super. 303, 313-14 (App. Div. 2016); see also State v. Gartland, 149 N.J. 456, 464 (1997) ("Our courts will entertain a case that has become moot when the issue is of significant public importance and is likely to recur."); Jamgochian v. N.J. State Parole Bd., 394 N.J. Super. 517, 529 (App. Div. 2007) (considering challenges to conditions of the defendant's parole on the merits, even though the conditions were dismissed prior to the appeal, because the arguments raised "issues of substantial importance that are likely to recur but evade review"), aff'd as modified, 196 N.J. 222 (2008).

Next, we set forth the due process requirements when parole is revoked and our standard of review. Our Supreme Court has adopted the minimum due process requirements identified by the

United States Supreme Court that a parolee must receive before his or her parole is revoked. That process includes:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.
>
> [Jamgochian v. State Parole Board, 196 N.J. 222, 243-44 (2008) (quoting Morrissey v. Brewer, 408 U.S. 471, 489) (1972)).]

Our review of the Board's determination is limited. We will defer to the decision of an administrative agency unless it "is arbitrary, capricious or unreasonable." In re State & Sch. Emps.' Health Benefits Comm'ns' Implementation of Yucht, 233 N.J. 267, 279-80 (2018). In that regard, we consider whether there is substantial credible evidence in the record to support the agency's determination. Id. at 280. "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result[.]" In re Carter, 191 N.J. 474, 483 (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

A-4953-16T2

When the Board revokes parole, its decision must be supported by clear and convincing evidence. N.J.A.C. 10A:71-7.12(c)(1). Clear and convincing evidence is evidence

> upon which the trier of fact can rest "a firm belief or conviction as to the truth of the allegations sought to be established." . . . It must be "so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."
>
> [In re Registrant R.F., 317 N.J. Super. 379, 384 (App. Div. 1998) (internal citations omitted).]

The relaxed rules of evidence governing an administrative hearing also apply to a parole revocation hearing. Jamgochian, 196 N.J. at 250; see also N.J.S.A. 52:14B-10 (providing that "parties shall not be bound by rules of evidence" and "[a]ll relevant evidence is admissible"). Accordingly, "hearsay evidence will be admissible, subject to the sound discretion of the Parole Board." Jamgochian, 196 N.J. at 250 (citing N.J.A.C. 1:1-15.5).

All of N.K.'s arguments on appeal depend on whether there was substantial credible evidence in the record for the Board to establish, by clear and convincing evidence, that he seriously and persistently violated the conditions of his PSL. As already noted, the Board found that N.K. violated five different conditions of his parole.

N.K.'s primary argument is that all of the evidence was presented through the hearsay testimony of the stand-in parole officer. Relying on a parole officer who does not have direct knowledge of the violations is not the best practice. In this case, however, N.K. declined the hearing officer's offer to postpone the hearing until the POR was available.

Just as significantly, some of the key evidence against N.K. was his own undisputed admissions. In writing, N.K. admitted to possessing alcohol and having a Facebook account. He also made a verbal admission, which he did not dispute at the hearing, that he used YouTube. Thus, the hearsay information that came from the POR's written summary was corroborated and supported by N.K.'s own admissions. Viewing this administrative record in light of our standard of review, there was clear and convincing evidence that N.K. used a computer or device to access a social networking service and failed to notify his POR that he was using a computer or device to access the internet.

With regard to the treatment programs, the record contained written discharge summaries from both programs, neither of which N.K. disputed at the hearing. Thus, the hearsay testimony from the POR's written summary was corroborated and supported by the written discharges from the treatment programs. Consequently, there was also clear and convincing evidence that N.K. failed to

successfully complete a counseling and treatment program and to participate in his mental health counseling program.

Finally, the record contains a written admission by N.K. that he possessed two bottles of alcohol during his parole. Again, we discern no abuse of discretion in the Board's determination that the admission constituted clear and convincing evidence that N.K. violated the conditions of his PSL.

The record before us demonstrates that N.K. was well-represented by assigned counsel. Assigned counsel presented thoughtful arguments at each stage of the proceedings before the Board. In the briefs submitted to us, counsel has done a good job in making the best arguments possible on behalf of N.K. Nevertheless, having reviewed the full record, we find no basis to disturb the determinations made by the Board.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4953-16T2